**No. 24-5204**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

SARA BOYSEN, *et al*,

*Plaintiffs-Appellants,*

v.

PEACEHEALTH, *et al*

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Oregon
No. 6:23-cv-1229-AA
Hon. Ann Aiken

---

**APPELLANTS' REPLY BRIEF**

---

David Joseph Schexnaydre
Schexnaydre Law Firm, LLC
2895 Hwy 190, Ste 212
Mandeville, LA 70471
Phone: 985-292-2020
Email: david@schexnaydre.com

*Attorneys for Appellants*

1

## TABLE OF CONTENTS

I. Pfizer-BioNTech COVID-19 Vaccine ....................................................... 4
II. CDC COVID-19 Vaccination Program .................................................... 7
III. EUA Statute ................................................................................................ 9
IV. PREP Act .................................................................................................. 10
V. Federal Wide Assurance Agreement ....................................................... 11
VI. State Action .............................................................................................. 14
VII. Qualified Immunity ................................................................................. 15
VIII. Causes of Action ...................................................................................... 16
IX. Dismissal with Prejudice ......................................................................... 18

## TABLE OF AUTHORITIES

**Cases**
*Bailey v. Patterson*, 369 U.S. 31 (1962) ....................................................................... 16
*Board of Regents v. Roth*, 408 U.S. 564 (1972) ........................................................ 17
*Dennis v. Higgins*, 498 U.S. 439 (1991) ..................................................................... 17
*Groten v. California*, 251 F.3d 844 (9th Cir. 2001) .................................................. 16
*Health and Hosp. Corp of Marion Cty v. Talevski*, 599 U.S. 166 (2023) .............. 17
*Pearson v. Callahan*, 555 U.S. 223 (2009) ................................................................. 16

**Statutes**
21 USC § 352 ..................................................................................................................... 5
21 USC § 355 ..................................................................................................................... 5
21 USC § 360bbb(a) ......................................................................................................... 6
21 USC § 360bbb-3 .......................................................................................................... 6
21 USC § 360bbb-3(e) ...................................................................................................... 9
21 USC § 360bbb-3(l) ....................................................................................................... 9
42 USC § 247d-6d ........................................................................................................... 11

## I. Pfizer-BioNTech COVID-19 Vaccine

Defendants continue to advance unsubstantiated claims that directly impact the interests of the United States Government ("USG") and Pfizer Inc., asserting that the "Pfizer-BioNTech COVID-19 Vaccine" changed its legal status on August 23, 2021, concurrent with the FDA's approval of COMIRNATY®, which was explicitly described as a "legally distinct drug" in the EUA authorization letter. (Dkt. 24, p. 9)

These claims contradict the Health and Human Services Secretary's official determination, issued under exclusive statutory authority, that the Pfizer-BioNTech COVID-19 Vaccine remains subject to investigational new drug application 19736.(cite to EUA letter) Since August 23, 2021, the FDA has not published any notice in the Federal Register reclassifying this product from its status as "an investigational vaccine not licensed for any indication." (3-ER-297)

Furthermore, Defendants' position cannot be reconciled with their explicit ministerial duty, as mandated by the Secretary, to "conspicuously" disclose that the "Pfizer-BioNTech COVID-19 Vaccine has not been approved or licensed by FDA." (2-ER-223)

Defendants' unsubstantiated assertions regarding formulation equivalence are both factually questionable and legally irrelevant. The FDA never claimed all existing investigational vaccine vials shared a formulation with COMIRNATY®—only that formulations matched as of August 23, 2021. (2-ER-106) However, the

4

Secretary stated that an EUA was being issued because Pfizer had only its investigational version available within the marketplace. (2-ER-109) Moreover, Pfizer faces no legal obligation to maintain formulation consistency between investigational and licensed products, as the investigational process inherently involves formulation variations.

Most critically, a pharmaceutical product's legal status derives from its labeling, not its formulation. Following COMIRNATY®'s approval, the regulatory framework governing the Pfizer-BioNTech COVID-19 Vaccine remained completely unchanged, with separate and distinct legal requirements continuing to apply to each product. (2-ER-106, FN 8)

Defendants effectively seek this Court's permission to engage in pharmaceutical misbranding—a federal felony (21 USC § 352). They request judicial approval for assigning unapproved indications to investigational drugs and promoting these products with the calculated intent to mislead recipients into believing they were manufactured, labeled, distributed, and regulated under the full biologics license application (BLA) statutory framework of 21 USC § 355. (Dkt. 24, p. 9) Such a request asks the Court to legitimize a deliberate circumvention of drug safety regulations by allowing Defendants to create the false impression that the Pfizer-BioNTech COVID-19 Vaccine operated under approved licensing conditions when it expressly did not. Defendants' request not only undermines the entire federal

5

regulatory framework for drug safety but invites the Court to become complicit in precisely the type of misrepresentation that Congress sought to criminalize through misbranding statutes. Defendants' claim that the drug is approved and under EUA, but a drug cannot operate under both legal statuses simultaneously since an EUA only allows the Secretary to issue expanded access protocols for the *unlicensed* use of investigational medical products (21 USC § 360bbb(a)). (2-ER-204)

The Secretary did not inform why Pfizer shipped only its investigational formulations and never any of its licensed version of its drug, which is proven by continued issuances of EUAs. Therefore, the Secretary and Pfizer agreed to a legal environment that Defendants seek to retroactively amend to escape liability for failure to perform promised duties on behalf of the USG and Oregon.

Defendants' unsubstantiated assertions that Pfizer-BioNTech COVID-19 Vaccine was approved effectively accuse multiple federal officials of serious misconduct without evidence. (Dkt. 24, p. 9) Defendants' claims implicitly charge the Secretary and Pfizer with a direct violation of 21 USC § 360bbb-3 requirements by maintaining an Emergency Use Authorization when an FDA-licensed alternative allegedly existed in the marketplace. This position not only lacks factual support but suggests that Defendants are engaging in deliberate misrepresentation of the regulatory status of the subject drugs.

6

By claiming the drug is not what the federal government claimed, Defendants' claims tacitly accuse the Secretary, FDA Commissioner, and CDC Director of falsifying official government documents. These officials explicitly stated that the Pfizer-BioNTech COVID-19 Vaccine was not approved for any legal indication, remained under investigational application 19736, and was available solely through emergency access protocols. (3-ER-271-410) By contradicting these official determinations without evidence, Defendants are effectively alleging coordinated misconduct across multiple federal regulatory agencies—a position relied upon by the district court when granting Defendants' Rule 12(b)(6) motions to dismiss, when stating, "The record flatly contradicts and renders implausible Plaintiffs' theory that the Pfizer Vaccine was investigational only" (1-ER-14),which is reversible error.

## II.  CDC COVID-19 Vaccination Program

Defendants do not dispute that the USG owned the drugs (3-ER-326) and had an obligation to obtain an individual's legally effective informed consent prior to administration (3-ER-295) and that the CDC Program required authorized agents to obtain a potential participant's private identifiable information, monitor them for adverse events, and report that information to mandated sources. (3-ER-298, 300, 301, 321 see FN 49, 430, 431, 440).

Defendants do not dispute that the USG recruited Oregon to perform the governmental function of accepting an individual's legally effective informed

7

consent on behalf of the USG, nor do they dispute that Oregon agreed to perform that duty under its prerogative. (2-ER-350)

Defendants do not dispute that Governor Brown and Director Allen were responsible for executing the CDC Program on behalf of the USG, including the ministerial function of obtaining Plaintiffs' legally effective informed consent. (2-ER-350)

PeaceHealth Defendants do not dispute that they agreed to perform the governmental function on behalf of Oregon. (3-ER-295)

Governor Brown and Director Allen do not dispute that they were the "emergency response stakeholder" under each EUA and promised to perform those duties.

PeaceHealth Defendants do not dispute that they were the "vaccination provider" under each EUA and promised to perform those duties.

Therefore, the USG owed Plaintiffs their property right to give legally effective informed consent. The USG delegated that governmental function to Oregon via the CDC COVID-19 Vaccination Program, which Oregon delegated to PeaceHealth. (3-ER-350)

Plaintiffs have the Fourteenth Amendment right to (1) refuse unwanted investigational drug treatments, (2) be treated equally with those who chose the option to accept, (3) enjoy federal benefits under the CDC Program without

8

deprivation by any Defendant, (4) use their state-issued healthcare licenses without being subject to investigational medical treatments, (5) refuse forfeiture of due process rights to sue for injuries sustained by a PREP Act countermeasure or its administration. (3-ER-401-408)

Defendants claim they did not subject Plaintiffs to medical research activities but Defendants failed to inform the court that they agreed to perform those research activities on behalf of the USG under the CDC Program and EUAs. (3-ER-298, 300, 301, 321 see footnote # 49, 430, 431, 440)

Defendants do not explain how or why Plaintiffs do not have a legitimate claim of entitlement to these rights.

### III. EUA Statute

Defendants failed to address the question of their authority to modify the Secretary's explicit conditions of authorization for emergency use of unlicensed medical products. (Dkt. 23; Dkt. 24) The EUA Statute grants the Secretary exclusive statutory authority to establish these authorization conditions (21 USC §360bbb-3(e)), while simultaneously prohibiting the Secretary from mandating nonconsensual use by any person (21 USC § 360bbb-3(l)).

This statutory framework creates an insurmountable barrier against Defendants' position. (Dkt. 11, p. 27) Defendants have not explained how they could mandate use of EUA drugs when Congress expressly denied such authority even to

9

the Secretary himself. (Dkt. 23; Dkt. 24) If Congress explicitly prohibited the Secretary from mandating use of EUA drugs, this prohibition necessarily extends to all entities operating under the Secretary's authority. After all, the Secretary cannot delegage duties he does not possess.

Defendants have provided no explanation for how their actions could be considered within legal boundaries. This silence reveals the defect in their position—they claim authority to mandate what Congress explicitly denied the federal government authority to mandate.

When an entity volunteers to perform under an EUA for a drug that is only available through the CDC Program, that entity becomes an agent under HHS authority. (Dkt. 11, p. 52) The volunteering entity cannot arbitrarily amend the EUA to require nonconsensual use of an EUA drug, or even to require a medical or religious exemption to exercise the fundamental right to refuse unwanted investigational drugs and medical treatment.

### IV. PREP Act

Defendants have failed to address a critical legal contradiction in their position regarding the PREP Act. (Dkt. 23; Dkt. 24) They assert authority to establish or maintain legal requirements mandating use of EUA drugs. (Dkt. 23; Dkt. 24) Yet, they do not explain how this authority exists in the face of express preemption under the PREP Act.

The PREP Act explicitly preempts States and those acting on their behalf from creating legal requirements that conflict with the voluntary nature of a PREP Act program or any requirement applicable to a PREP Act countermeasure under the Food, Drug, and Cosmetic Act ("FDCA"). (42 U.S.C. § 247d-6d) The statute specifically prohibits requirements that contradict an individual's option to accept or refuse an EUA drug—a protection established as a requirement applicable to covered countermeasures under the FDCA. (*Id.*)

The express preemption provision contradicts Defendants' claimed authority. They have not explained how they possess authority to mandate what federal law has explicitly made voluntary, and that is because they have no such authority.

No Governor, State Health Director, or person acting on behalf of the State or Secretary as a "covered person" under the PREP Act can mandate the use of a covered countermeasure. (*Id.*)

Defendants do not explain how they can use the PREP Act as a procedural device to accomplish a result they cannot command directly—the complete forfeiture of Plaintiffs' Fourteenth Amendment due process rights to judicial remedy if injured by a PREP Act countermeasure or its administration. (Dkt. 23; Dkt. 24)

### V. Federal Wide Assurance Agreement

Defendants have not identified any basis for their claimed authority to mandate nonconsensual use of federally funded investigational drugs or include

11

these products in vaccination requirements—actions that directly violate their Federal Wide Assurance (FWA) agreements. (Dkt. 23; Dkt. 24)

Defendants' obligation to obtain legally effective informed consent when offering individuals investigational drugs or medical treatments is not factually disputed, yet the lower court inexplicably rejected Plaintiffs' allegations for Rule 12(b)(6) purposes. (1-ER-3-31) This represents a misapplication of pleading standards.

Defendants' focus on whether they physically administered the drugs to the Plaintiffs misses the central legal question: by what authority can Defendants place individuals under pressure to use investigational drugs? Legally effective informed consent explicitly prohibits such pressure tactics by signatories to an FWA, regardless of who ultimately administers the product. (3-ER-292, 314)

Most critically, through their FWAs, Defendants provided written assurances to the USG explicitly promising never to engage in the conduct now at issue. (3-ER-314-319) The lower court's refusal to permit discovery of these FWAs prevented Plaintiffs from providing evidence supporting their factual allegations—a procedural error that denied plaintiffs the opportunity to prove their presumptively true claims with documentary evidence in direct contradiction of Rule 12(b)(6) standards.

Defendants do not explain by what authority they can mandate the nonconsensual use of federally funded investigational drugs when such conduct violates their FWA agreements. (Dkt. 23; Dkt. 24)

Defendants must obtain Plaintiffs' legally effective informed consent when subjecting them to investigational medical products, a claim Defendants did not dispute. (3-ER-292) Still, the lower court did not accept Plaintiffs' allegations as true for purposes of Rule 12(b)(6). (1-ER-3-31)

Legally effective informed consent denies Defendants any authority to place Plaintiffs under pressure to use investigational drugs. (3-ER-292) Whether Defendants administer the drug is irrelevant. The relevant inquiry is whether Congress authorized Defendants to place Plaintiffs under pressure to use the drugs— Congress expressly denies Defendants such authority.

Factually, no person may take possession of or administer an investigational drug without operating under and complying with the FWA program. (3-ER-314) Defendants provided the USG with written assurance they would never engage in the challenged conduct. (3-ER-314) The lower court did not allow Plaintiffs to produce Defendants' FWAs via discovery to prove their presumptively true facts. (1-ER-3-31)

13

## VI. State Action

PeaceHealth Defendants incorrectly attempt to distance themselves from state action regarding their voluntary agreement to perform certain governmental functions on behalf of Oregon. (Dkt. 23, p. 11-21)

PeaceHealth engaged in state action whenever it interacted with anyone, employee or non-employee, regarding the federally funded CDC Program and the EUA/PREP Act drugs provided thereunder. (3-ER-337-360) PeaceHealth willfully agreed to perform the governmental function of accepting Plaintiffs' freely given consent on behalf of Oregon, which had committed to perform the same function for the USG. (3-ER-337-360)

Defendants deprived Plaintiffs of their Constitutional and federal statutory rights when Plaintiffs refused to surrender their constitutional, statutory, and programmatic rights to decline use of federally funded investigational drugs as described in Plaintiffs' opening brief. (Dkt. 11) While employment termination constitutes an injury, it stems from a State-enforced custom established through Governor Brown and Director Allen's deliberate failure to fulfill their federal program obligations. (3-ER-356)

Critically, Defendants fail to address how the lower court's refusal to accept Plaintiffs' allegations as true regarding when, where, and how Defendants

14

prospectively committed to perform ministerial duties on behalf of the federal government, does not constitute reversible error. (Dkt. 23, Dkt. 24)

If the United States Government owned the investigational drugs, was obligated to obtain Plaintiffs' legally effective informed consent, and delegated that duty through Oregon to PeaceHealth, then case law clearly establishes PeaceHealth as a state actor bound by Fourteenth Amendment obligations. (3-ER-343-360) Under this chain of delegation, PeaceHealth assumed constitutional responsibilities that explicitly prohibited mandating nonconsensual use of investigational drugs and created an unbroken line of constitutional accountability from the federal government through its delegated agents to the individual, preventing any entity in this chain from exercising authority that the USG itself does not possess. The assumption of governmental functions through this chain of delegation transforms PeaceHealth's actions from private conduct to state action subject to constitutional constraints.

The lower court committed reversible error when not accepting these allegations as true for purposes of Rule 12(b)(6).

### VII. Qualified Immunity

Governor Inslee and Director Allen prospectively agreed to perform certain ministerial duties on behalf of the USG, including accepting the plaintiffs' legally

15

effective informed consent regarding use of EUA/PREP Act investigational drugs available only under the federal CDC Program. (3-ER-291, 303, 348, 350)

The Supreme Court holds that qualified immunity is "an immunity from suit rather than a mere defense to liability" because "the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery." *Pearson v. Callahan*, 555 U.S. 223 (2009). Insubstantial claims only involve allegations that are "essentially fictitious" and "obviously without merit." *Bailey v. Patterson*, 369 U.S. 31 (1962). Plaintiffs' allegations are not "insubstantial" or "without merit," and therefore, for purposes of Rule 12(b)(6), it is improper to grant qualified immunity to State Defendants when Plaintiffs alleged that State Defendants acted outside the scope of their authority and failed to perform ministerial duties. "[M]inisterial acts are unshielded by qualified immunity, which protects 'only actions taken pursuant to discretionary functions'" *Groten v. California*, 251 F.3d 844 (9th Cir. 2001).

### VIII. Causes of Action

Defendants' characterization that Plaintiffs do not have a fundamental right to refuse vaccination deliberately misrepresents Plaintiffs' actual claims and sidesteps the core constitutional question. (Dkt. 23, p. 38; Dkt. 24, p. 17) While courts may debate the scope of the right to refuse FDA-licensed vaccines, no legitimate constitutional debate exists regarding individuals' rights to decline investigational

16

medical treatments, refuse to be human subjects in federally funded research, protect their private health information from unauthorized disclosure, and preserve their Fourteenth Amendment guarantee of legal remedy for injuries. The district court's reductive framing of this case as mere vaccine refusal ignores these established constitutional protections against pressured use of EUA/PREP Act investigational drugs—protections that Oregon and PeaceHealth explicitly committed to uphold as delegates of federal authority. (1-ER-3-31)

As detailed in Plaintiffs' opening brief, legally effective informed consent represents a deeply rooted right embedded throughout national laws, culture, and regulatory structures. (Dkt. 11, p. 18) No entity can legally administer an investigational new drug without promising to protect this fundamental principle. (Dkt. 11, p. 17-21)

Furthermore, legally effective informed consent constitutes a protected property right under the Due Process Clause, meeting the stringent threshold established in *Board of Regents v. Roth*, 408 U.S. 564 (1972) and enforceable under §1984 via *Dennis v. Higgins*, 498 U.S. 439 (1991) and *Health and Hosp. Corp of Marion Cty v. Talevski*, 599 U.S. 166 (2023) precedents. This property right emerged from explicit rules of understanding that all Defendants contractually agreed to follow. (Dkt. 11, p. 26) Once established, this right cannot be revoked without cause

17

and warrants the highest level of constitutional protection under strict scrutiny standards. (Dkt. 11, p. 21)

## IX. Dismissal With Prejudice

The district court erred in dismissing Plaintiffs' Complaint with prejudice, without issuing leave to amend to address the court's ruling. (1-ER-3-31) Pursuant to Federal Rule of Civil Procedure Rule 15(a)(2), the district should have given Plaintiffs leave to amend the Complaint to effectively demonstrate and allege how Oregon agreed to perform governmental functions on behalf of the USG and how PeaceHealth agreed to perform those functions on behalf of Oregon because "justice so requires." Additionally, the district court should have granted Plaintiffs leave to amend the Complaint to demonstrate how the CDC Program conferred upon them property rights subject to the Fourteenth Amendment and amend the counts to better conform to constitutional arguments.

## X. CONCLUSION

For the foregoing reasons, Plaintiffs urge the court to reverse and remand to the district court for further proceedings.

David Joseph Schexnaydre
Schexnaydre Law Firm, LLC
2895 Hwy 190, Ste 212
Mandeville, LA 70471
Phone: 985-292-2020
Email: david@schexnaydre.com
*Attorneys for Appellants*

18

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** _____24-5204_____

I am the attorney or self-represented party.

**This brief contains 2,923 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties;
  [ ] a party or parties are filing a single brief in response to multiple briefs; or
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ David J. Schexnaydre*          **Date: February 21, 2025**
*(use "s/[typed name]" to sign electronically filed documents)*

19